**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**NATIONAL ADVISORY COMMITTEE ON MICROBIOLOGICAL CRITERIA FOR FOODS, et al., Defendants.**

Civ. A. No. 88–1959.

United States District Court, District of Columbia.

Oct. 25, 1988.

Patti A. Goldman and Eric R. Glitzenstein, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Jeffrey L. Gutman, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case comes before the Court on plaintiffs' motion for a preliminary injunction.[1] Argument on the motion was heard on September 22, 1988. After careful consideration of the motion, the arguments of the parties, and the record in this case, the Court concludes that the preliminary injunction must be denied and the case dismissed.

·I

On March 18, 1988, the Secretary of Agriculture established the National Advisory Committee on Microbiological Criteria for Foods (the Committee). The purpose of the Committee as evidenced by its Charter is to provide advice and recommendations on the development of microbiological criteria for foods. Charter of the Committee at

1(b). The Operating Procedures for the Committee (Operating Procedures) provide that membership on the Committee shall consist of appropriate personnel selected from the primary federal agencies having responsibility for assuring foods are safe and of acceptable quality, state and/or municipal food regulatory agencies, the food industry and academia. See Operating Procedures. Further the Operating Procedures indicate that the "Committee shall address the selection of foods and food ingredients on the basis of need for microbiological criteria that can effectively supplement and be incorporated into food protection programs of Federal, state and municipal food regulatory agencies; and development of criteria for each food for which it is determined that microbiological criteria would serve a useful purpose." Id. Additionally, "[d]uring its deliberations, the Committee shall address the continuing need for research to better understand the effects of current and emerging processing and distribution practices that may affect microbial safety and quality; and, the need to improve and develop methods for the detection and enumeration of microorganisms and their toxic agents that are important to the safety and quality of food." Id.

When this suit was filed the Committee consisted of nineteen members.[2] In terms of area of expertise the Committee is composed of: two university professors, one state agriculture department official, one state department of agriculture and consumer services official, two persons employed by food research firms, six persons employed in various capacities by relevant federal agencies, six persons employed by private food companies and one individual employed by a food processors' organization. The Committee has met twice, on April 5 and 6 and on June 22 and 23, 1988. The Committee was scheduled to meet on October 20 and 21, 1988.

---

1. Pursuant to Fed.R.Civ.P. 65(a)(2), the parties have agreed to consolidate trial of this action on the merits with the hearing of the application for a preliminary injunction.

2. Effective September 30, 1988, Committee Member Kenneth M. Iwamoto, Director of Research and Development and Quality Assurance for Frionor, U.S.A., a processor and supplier of seafood products, resigned from the Committee.

Plaintiffs, a public interest organization, a consumer organization, a senior citizen research and advocacy organization, and three consumer research, education and advocacy organizations (hereinafter collectively referred to as Public Citizen), filed this suit against the Committee, the United States Department of Agriculture (USDA) and the United States Department of Health and Human Services (HHS) seeking declaratory and injunctive relief from an alleged violation of the Federal Advisory Committee Act (FACA), 5 U.S.C. App. II, based on the composition of the Committee.

## II

In their complaint, plaintiffs maintain that the purpose of the Committee is to provide advice on the types of biological contaminants that present the gravest risks to consumers, the kinds of foods on which USDA and HHS should focus their attention, and the nature of the regulatory scheme, if any, the federal government should devise to respond to the health threats posed by microorganisms. It is argued that in spite of the overriding significance of these issues, the USDA has refused to appoint even a single "consumer representative or advocate to the Committee".[3] They contend that over half of the members of the Committee are employees, consultants, or contractors of the food in-

dustry, which has a direct economic stake in the kind and scope of any federal regulation of microbiological contaminants. Public Citizen argues that the Committee has violated FACA which requires that all federal advisory committees be "fairly balanced in terms of the points of view represented and the functions to be performed" and that they must not be "inappropriately influenced ... by any special interest group ..." 5 U.S.C.App. II, § 5(b)(2)–(3).[4] A preliminary injunction is sought to prevent the Committee from proceeding with its work unless and until it meets the balanced membership requirements of FACA.

In support of these assertions plaintiffs state that while there may be "conceptual and practical difficulties" in applying the "fairly balanced" requirement of FACA to some kinds of advisory committees relying on *National Treasury Employees Union v. Reagan*, Civ. No. 88–186 (D.D.C. February 25, 1988) (hereinafter *NTEU*), [1988 WL 21700], that these difficulties are not present in this case. Plaintiffs contend that where agency officials create an advisory committee to obtain guidance in performing a specific, discrete regulatory function, the agency cannot then allow the committee to be dominated by representatives of the regulated industry, "while entirely excluding representatives of consumers[5], whose health may be directly affected

---

**3.** Plaintiffs have not provided a profile of the type of consumer advocate or representative they seek, nor have they specified the number of representatives necessary to constitute balance. They have submitted the affidavits of six individuals representing various non-profit consumer research and advocacy organizations, each affidavit states that in the affiant's opinion the consumer viewpoint is not adequately represented on the Committee. *See* Plaintiffs' Exhibits S–X. Additionally, two of these affiants provided the names of individuals that the affiants assert would be qualified to participate on the Committee. Plaintiffs' Exhibits S–T.

**4.** The relevant portions of FACA, 5 U.S.C.App. II, § 5(b), provide that any such legislation shall: "... (2) require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee; (3) contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropri-

ately influenced by the appointing authority or by any special interest, but will instead result from the advisory committee's independent judgment ..."

**5.** By letter dated May 12, 1988, plaintiffs requested that the Secretary of Agriculture Richard Lying take immediate action to appoint consumer representatives with public health expertise to membership on the Committee. Responding by letter dated June 15, 1988, Assistant Secretary Gilles denied that request, but noted that USDA would consider other individuals in the event of a vacancy. Secretary Gilles also pointed out that Committee Member Martha Rhodes, Assistant Commissioner of the Florida Department of Agriculture and Consumer Services would offer a consumer perspective to the work of the Committee. Plaintiffs submit that in addition to the fact that only a single member of the Committee has been designated to have consumer experience, that member is an employee of a state agency rather than a consumer group or organization.

by the work of the committee". Plaintiffs' Memorandum in Support of its' Motion for Preliminary Injunction at 23. Plaintiffs insist that the absence of consumer representation on the Committee is sufficient to condemn the Committee to a finding of illegal composition. *Id.* at 20. Public Citizen adds that because of the overwhelming involvement of the food industry there can be no serious debate as to whether the Commission is in compliance with the Congressional mandate of FACA. *Id.*

In response defendants state that plaintiffs' motion must be denied on four grounds. First, plaintiffs have failed to demonstrate any likelihood of success on the merits since the requested relief is unwarranted because the Committee membership as presently constituted is balanced in terms of the scope of its efforts and functions it is to perform. Defendants argue that this fair balance prevents plaintiffs from showing that the Committee is inappropriately influenced by any special interest group. Second, plaintiffs have completely failed to demonstrate irreparable injury to them if the incumbent Committee continues to function. Additionally, plaintiffs have neither any legal entitlement to their own representative on the Committee nor have they demonstrated that their interests are not already represented on the Committee. Third, defendants submit that there has been no suggestion that plaintiffs have been unable to present their view to the Committee since the meetings are open to the public, therefore defendants conclude that any alleged injury is speculative and remote. Finally, defendants submit that since this field is largely unregulated, there is a substantial public interest in the development of microbiological criteria for foods to prevent death and illness from impure or contaminated foods. Defendants submit that the public interest strongly favors permitting the work of the Committee, charged with recommending regulations intended to protect the health of food consumer, to continue.

### III

■ In order to warrant the issuance of a preliminary injunction, plaintiffs have the burden of demonstrating: 1) that they have a strong likelihood of success on the merits of their claim; 2) that they will be irreparably harmed if an injunction is not granted; 3) that the issuance of an injunction will not harm others; and 4) that the public interest will best be served by the injunction. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977). Even in the FACA context, the extraordinary nature of a preliminary injunction demands that the requesting party carry the burden of demonstrating irreparable harm and inadequacy of legal remedies as a basis for such relief. *National Association of People with Aids v. President Reagan*, No. 87–2777, slip op. at 8 (D.D.C. Dec. 16, 1987) [1988 WL 36143]. After applying these stringent legal rules to the facts of this case, the Court is constrained to conclude that plaintiffs have failed to carry the required burden for injunctive relief and in view of the absence of any factual dispute plaintiffs are not entitled to the relief requested as a matter of law.

Since the term "balance" is not defined in the FACA, judicial inquiry in this area has turned on whether the "Committee's members represent a fair balance of viewpoints given the function to be performed." *See National Anti–Hunger Coalition v. Executive Committee of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 (D.C.Cir.), *aff'g* 557 F.Supp 524 (D.D.C.), *modified*, 566 F.Supp. 1515 (D.D.C.1983) (motion for relief from judgment granted). In *National Anti–Hunger Coalition*, the composition of the Executive Committee was challenged because it was almost exclusively comprised of executives of large corporations. *Id.* at 1072. The District Court held that since the Committee was designed to apply private sector expertise to attain cost-effective management in federal government, the President could legitimately select those with experience in fiscal management of large private organizations. *National Anti–Hunger Coalition* 557 F.Supp. at 528. Moreover, the *National Anti–Hunger Coalition* court concluded that the al-

leged imbalances in membership are "simply irrelevant to the ability of the Executive Committee to perform its limited function fairly and impartially." *Id.*

■ In this case, the Committee is charged with addressing the selection of foods and food ingredients on the basis of the need for microbiological criteria that can be incorporated into governmental food protection programs and to confront the continuing need for research to better understand the effects of current and emerging processing and distribution practices that may affect microbial safety and quality. Thus the Court must determine whether under FACA the Committee as currently constituted is balanced in accordance with its advisory function. Plaintiff has offered no evidence that the Committee is unfit for this task.[6] The Committee is charged with a highly technical mandate which requires extensive scientific background as well as expertise in processing and distribution practices. Each of the Committee's members have extensive professional background in various aspects of food microbiology. In sum, there is no indication that the present Committee is unable to fulfill its functions.

Additionally, plaintiffs contend that the Committee is being inappropriately influenced by a special interest group, the food industry. In *NTEU*, the President established a Commission on Privatization to study all activities of the federal government and report on which government programs enterprises and activities are more appropriately part of the private sector. slip op. at 2. The *NTEU* Commission was comprised of thirteen members selected from both the private and public sectors as well as academia, but none of the Commission members represented the federal employees. *Id.* at 3. Plaintiffs in *NTEU*

charged that the Commission was violative of the fairly balanced requirement of FACA since the Commission included no representative of federal employees who have a direct interest in the committee's recommendations particularly when the Commission hosts advocates of privatization only. *Id.* at 6. The *NTEU* Court concluded that "we do not find that Congress intended the 'fairly balanced' requirement to entitle *every* interested party or group affected to representation on the Commission." *Id.* at 8 (emphasis in original). The harm asserted in *NTEU* is very similar to the harm alleged in this case, except that in *NTEU* there were clearly no representatives of the plaintiffs' interests.[7] There was no finding that the *NTEU* Commission was inappropriately influenced even though it was dominated by the private sector because the nature of the function of the Committee governs the suitability of its members for the purpose of determining whether the Committee is balanced. In this case, there is representation on the Committee by individuals outside of industry. Further given the language of the Charter, representatives from different food industries are appropriate given the Committee's directive to study current and future distribution processes. Although plaintiffs argue that the Committee is being inappropriately influenced by the food industry, they have not offered any documented evidence that the Committee members selected from the food industry have acted improperly or exceeded the scope of the mandate of the Committee in the work that the Committee has performed to date.

Finally, plaintiffs stress the fact that in their view the consumer perspective is glaringly absent from the Committee in its current form, yet plaintiffs conceded at

---

**6.** Plaintiffs emphasize the statements of Kenneth Gilles before the Microbiological Committee particularly where he states: "As a committee you must resist the temptation to recommend strict standards just for the sake of appeasing certain special interest groups." Statement of Kenneth Gilles Before Microbiological Committee at 2. However, Gilles went on to state: "At the same time, you must resist the temptation not to recommend standards if they

are indeed justified." Clearly the combination of these statements do not amount to a particular bias.

**7.** It would be impossible to include among the members of the Committee every type of consumer group which *may* be affected by the Committee's work. *See NTEU,* slip op. at 8–9.

oral argument that defendants have discretion in selecting which consumer advocate or advocates are appointed to the Committee. Presumably this accounts for plaintiffs failure to specifically state what action should be taken to provide the balance sought by plaintiffs. Notwithstanding plaintiffs' arguments in this regard, the Court of Appeals for this Circuit noted in *National Anti–Hunger Coalition*, that FACA confers no cognizable personal right to an advisory committee appointment. 711 F.2d at 1074 n. 2. Moreover, there is no reason to believe that Congress intended to prohibit the selection of specialized advice and while different choices could have been made to accomplish the goals of the Committee, the gathering of a particular group of experts is not in itself enough to render such an advisory committee unbalanced within the meaning of FACA. *National Anti–Hunger Coalition*, 557 F.Supp. at 528. If the purpose of this Committee was to study the effects of a particular type of regulation of microbiological criteria on the public, then the result might be different.

In conclusion, the Court notes that while Congress passed FACA with the goal of creating some controls and standards for governance of the advisory committee process, the statute presents various obstacles to appropriate judicial interpretation. 5 U.S.C. App. II, § 2; *See National Anti–Hunger Coalition*, 557 F.Supp. at 530. In *National Anti–Hunger Coalition*, Judge Gesell addressed the problem of judicial interpretation of FACA.

> ... It [FACA] is obscure, imprecise, and open to interpretations so broad that in the present context at least it would threaten to impinge unduly upon prerogatives preserved by the separation of powers doctrine. Not surprisingly, litigants seize on such uncertainties and may try to press statutory claims beyond statutory boundaries ... Many with considerable merit on their side criticize the involvement of federal courts in matters of this kind although the fault lies primarily with congressional drafting. If more expertise were applied to such enactments to ensure that Congress states with more precision what it intends, the rules of the game would be more sharply drawn and court involvement could be less.

557 F.Supp. at 530. This case illustrates several aspects of the difficulty of applying objective legal rules to the FACA. For example, plaintiffs rely solely on inferences and speculation to taint the composition of the Committee, thus food industry employment is equated with anti-regulatory sentiments and any member who has ever worked as a consultant for industry is also classified in this manner. Notably, plaintiffs have offered no specific evidence that their viewpoints are not adequately represented by the Committee. Like other courts which have addressed similar issues, this Court is concerned that if the speculative and conjectural injuries offered by the plaintiffs in this case were judicially cognizable, the Court would then be called upon to supervise the membership of federal advisory committees on a continual basis, thereby altering the composition of these committees on a subjective determination of fair balance. *NTEU*, slip op at 7 n. 5, *quoting, Metcalf v. National Petroleum Council*, 553 F.2d 176 (D.C.Cir.1977). Accordingly, plaintiffs' motion will be denied and the case dismissed.

An appropriate Order has been filed.