The FERTILIZER INSTITUTE, Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.

Civil Action No. 96–02045.

United States District Court, District of Columbia.

Sept. 18, 1996.

Thomas Christopher Papson, McKenna & Cuneo, L.L.P., Washington, DC, for plaintiff.

Eric D. Goulian, U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

---

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is brought by the Fertilizer Institute against the Environmental Protection Agency, *et al.*, for alleged violation of the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. § 5(b)(2), and the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551, *et. seq.* Before the Court are plaintiff's motions for injunctive and declaratory relief and defendants' motion for summary judgment. The Court heard argument on the motions on September 12, 1996. The Court has considered the motions, all opposition thereto, and the arguments by the parties. Plaintiff's motions for injunctive and declaratory relief will be denied. Defendants' motion to dismiss will be granted.

## BACKGROUND

On October 31, 1995, the EPA announced the establishment of the National Advisory Committee for Acute Exposure Guideline Levels for Hazardous Substances (the "Committee"). 60 Fed.Reg. 55,376 (Oct. 31, 1995). Acute Exposure Guidance Levels ("AEGLs") are exposure guideline levels for airborne concentrations of hazardous substances. AEGLs can be used by federal, state and local agencies and the private sector for emergency planning response and prevention activities related to the accidental release of hazardous substances.

The Committee was established pursuant to § 9(a)(2) of FACA. Its purpose is to develop proposed values for up to 400 AEGLs. The "proposed AEGLs" are then to be published in the Federal Register for public comment. Following the public comment period, the Committee will review all new information and reach consensus on "interim AEGLs" which will be interim values to be reviewed by the National Research Council of the National Academy of Sciences (the "NAS"). *See* Declaration of Dr. Paul S. Tobin, Designated Federal Officer for the Committee/AEGLs ("Tobin Decl."), ¶ 2–3, 14–15. The "final AEGLs" will then be pub-

lished under the auspices of the NAS. 60 Fed.Reg. at 55377.

FACA generally requires regulated committees to file a charter, *id.* § 9(c), to provide advance notice of their meetings and open them to the public, *id.,* § 10(a), and to make publicly available their minutes, records and reports, *id.* § 10(b). The statute also requires the membership of FACA committees "to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." *Id.,* § 5(b)(2), (c).

EPA issued the charter for the Committee (the "Charter") pursuant to FACA § 9(c). The Charter identifies various groups and organizations to be represented on the Committee, including "at least three members representing private industry." Charter ¶ 4. Nineteen individuals were appointed to the Committee on June 10, 1996, and the Committee met for the first time on June 19–21, 1996. After the second meeting on August 5–7, 1996, two members dropped out. EPA appointed four new members to the Committee on September 6, 1996.[1]

Plaintiff argues that the composition of the Committee violates the "fair balance" requirement of FACA with respect to industry representation, in that: (1) fewer than three members of the Committee represent private industry; (2) even if the Committee did meet the membership requirement of three members from private industry, the current number and composition does not constitute a "fair balance" on the Committee; and (3) no representative of the ammonia industry is a member of the Committee. Plaintiff also argues that the current composition of the Committee fails to comply with the Charter, in violation of FACA § 5(b)(2).

The government advances four arguments in support of its motion to dismiss: (1) plaintiff lacks standing to challenge the Committee's "fair balance" because it has not suffered any injury; (2) plaintiff's claims are nonjusticiable because of the lack of a judicially manageable standard of review of the "fair balance" requirement; (3) plaintiff cannot state a claim for relief under the Com-

---

1. The members of the Committee come from national and state government, research founda- tions and organizations, academia and private industry.

mittee's Charter; and (4) plaintiff is not entitled to preliminary injunction relief.

## ANALYSIS

, Although the FACA "fair balance" requirement has been addressed by this circuit on several occasions, the cases establish no clear precedent.[2] After applying the facts of this matter to the requirements of FACA and the APA, the Court finds that the issue of "fair balance" with respect to the Committee's composition is nonjusticiable. As an alternate basis for its decision, the Court also finds that plaintiff lacks standing to pursue its claim, missing both an imminent threat of injury or irreparable harm and an injury that is fairly traceable to the alleged FACA violation.

### 1. *Nonjusticiability*

Since FACA contains no provision for judicial review, the availability of such review must derive from the APA. *See Mulqueeny v. National Comm'n on the Observance of Women's Year,* 549 F.2d 1115, 1120 & n. 15; *Microbiological Criteria,* 886 F.2d at 419, 426, 432. The APA bars judicial review of agency action when the action is "committed to agency discretion by law." 5 U.S.C. § 701. Under *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), agency action is committed to agency discretion by law when Congress has provided no "meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830, 105 S.Ct. at 1655. That is, judicial review is not available under the APA if a statute is "drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).

■ It appears to be an open question in this circuit whether FACA's "fairly balanced" provision is justiciable.[3] On the basis of the record, the Court finds the issue to be nonjusticiable.

Plaintiff claims that the narrow function of the Committee, the development and recommendation of AEGLs, provides a meaningful standard for determining if the Committee is "fairly balanced." To meet such a standard, the Committee would have to include private sector representatives from the chemical industry with experience in ammonia toxicology. Plaintiff states that imbalance arises from the fact that the Committee does not have an adequate number of members representing chemical companies.

If plaintiff's position is adopted, these difficult questions would be presented: How many producer-representatives are enough to secure "balance"? What qualifications must someone have in order to be deemed an adequate representative of the chemical producers? What if there is a diversity of views among different chemical producers—whose views would then represent the industry? Must the Court review the background of each industry representative appointed to the Committee to ensure that industry views on the AEGLs for each of the 400 chemicals to be considered is represented?

Ultimately, on the basis of the facts before it, the Court concludes that the possibilities are "virtually infinite" and the judgment regarding what constitutes a "fair balance" of views "must be a political one." 886 F.2d at 426. For the Court to become entangled in determining what represents a "fair balance" would require the Court to arbitrarily substitute its judgment for that of the agency. No meaningful standards are available to assist the Court in making such determinations. In short, courts should not involve them-

---

**2.** *See Metcalf v. Nat'l Petroleum Council,* 553 F.2d 176 (D.C.Cir.1977); *Physician's Education Network, Inc. v. Dep't of Health, Education and Welfare, et al.,* 653 F.2d 621 (D.C.Cr.1981); *Nat'l Anti–Hunger Coalition, et al. v. Executive Committee of the President's Private Sector Survey on Cost Control, et al.* 557 F.Supp. 524 (D.D.C. 1983), *aff'd,* 711 F.2d 1071 (D.C.Cir.1983), *j'ment amended,* 566 F.Supp. 1515 (D.D.C.1983); and

*Public Citizen, et al. v. Nat'l Advisory Committee on Microbiological Criteria for Foods, et al.,* 886 F.2d 419 (D.C.Cir.1989), *aff'g* 708 F.Supp. 359 (D.D.C.1988).

**3.** *See,* in particular, the alternative conclusions reached by Judges Silberman and Edwards in *Microbiological Criteria,* 886 F.2d at 426 and 434, respectively.

selves in what is really an executive branch function.

■ The requirement in the Committee's Charter that there shall be at least three members representing private industry does appear to provide a clearer standard for review. An agency's "self-imposed constraints [issued in carrying out its statutory mandate] may supply the 'law to apply' under *Heckler v. Chaney." Center for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C.Cir.1988); *see also Robbins v. Reagan*, 780 F.2d 37, 45 (D.C.Cir. 1985). While plaintiff challenges the qualifications of one of the three industry representatives,[4] the Court is unwilling to substitute its judgment for that of the agency with respect to an appointment that appears to be facially correct.

### 2. *Standing*

Although the Court's ruling that this action is nonjusticiable is dispositive of this matter, the Court will briefly address standing as an alternative basis for its decision. Standing requires that plaintiff demonstrate: (1) "an injury in fact" that is "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) which is "fairly traceable" to the challenged action; and (3) is "likely" to be redressed in a tangible way by available judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Humane Soc'y v. Babbitt*, 46 F.3d 93, 96 (D.C.Cir.1995).

■ Plaintiff claims that it will be irreparably injured by a committee that is allegedly not "fairly balanced," because more stringent AEGLs will likely result for ammonia and other chemical substances. More stringent AEGLs would then result in additional compliance costs for plaintiff's member-producers.

But plaintiff does not face any imminent threat of injury or irreparable harm. The Committee has made no final decisions on any AEGLs, including ammonia; it has only identified proposed values for several AEGLs, which will be published in the Federal Register for comment by plaintiff and other interested parties. Although EPA does plan to adopt "final AEGLs" to implement risk management programs under its recently enacted Clean Air rulemaking proceeding. 61 Fed.Reg. 31668 (1996). If such rulemaking results in reliance on the AEGLs for ammonia, and plaintiff disagrees with that decision, it can challenge EPA's action at that time.

Plaintiff's claimed injury is not "fairly traceable" to the alleged FACA violation. Necessarily implicit in plaintiff's claim is the suggestion that if there were more industry representatives on the Committee it would likely propose ammonia AEGLs more favorable to plaintiff's economic interest.

But there is no reason to believe that the Committee would do anything differently with one or two more industry representatives serving on it. Indeed, one could just as easily say that if the Committee had more industry scientists familiar with the hazards associated with ammonia, then it might develop *more* stringent AEGLs. Plaintiff simply cannot establish a causal connection between the Committee's activities from those that would accrue to plaintiff or its member organizations.[5]

For all of the foregoing reasons, this Court shall grant defendant's motion for summary judgment and dismiss this action.

---

4.  Defendants do point to three industry appointees to the Committee as of September 6, 1996: Dr. George Rusch, Director of Toxicology at Allied Signal, Inc., the committee chairman; Mr. Larry Gephart, Senior Staff Toxicologist for Exxon Biomedical Sciences, Inc., a wholly owned subsidiary of Exxon Corporation; and Dr. Steven Barbee of Olin Corporation. Plaintiff argues that Dr. Steven Barbee of the Olin Corporation was, in fact, nominated by the Committee for Industri-

al Hygiene Association ("AIHA") and should be counted as an AIHA representative rather than a representative of private industry.

5.  This decision should not be construed as permitting an agency to do anything it pleases, possibly even including misleading its constituents. For an agency to remain credible, it must, in actuality and perception, treat those it regulates as it expects them to treat it.